IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–01203–WJM–KMT

MICHAEL L. MENDENHALL, an individual,

      Plaintiff,

v.

BANKERS LIFE AND CASUALTY COMPANY, an Illinois corporation, and
CNO FINANCIAL GROUP, INC. (f/k/a Conseco Inc.), a Delaware corporation,

      Defendants.

BANKERS LIFE AND CASUALTY COMPANY, an Illinois Corporation,

      Counterclaim-Plaintiff,

v.

MICHAEL L. MENDENHALL, an individual,

      Counterclaim-Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This matter comes before the court on "Defendants' Motion for Summary Judgment"

(Doc. No. 86 [Mot.], filed September 4, 2013), filed by Defendant CNO Financial Group, Inc.,

and Defendant/Counterclaim Plaintiff Bankers Life and Casualty (collectively "Bankers Life").

Plaintiff did not file a response.  This motion is ripe for recommendation and ruling.

# BACKGROUND

In this case, Plaintiff sues Defendants for breach of deferred compensation agreement, breach of employment agreement, and declaratory judgment, stemming from Defendants' alleged failure to compensate him after Defendants terminated his employment in 2010. (*See generally* Doc. No. 3 [Compl.])

# STATEMENT OF UNDISPUTED MATERIAL FACTS

## *Plaintiff's Employment With Bankers Life*

1.      Defendant Bankers Life ("Bankers Life") markets and distributes Medicare supplement insurance, interest-sensitive life insurance, traditional life insurance, fixed annuities, and long-term care insurance products to the middle-income senior market through a dedicated field force of career agents and sales managers supported by a network of community-based branch offices.  (Compl., ¶ 6; Doc. No. 12 [Answer], ¶ 6.)

2.      Plaintiff worked for Bankers Life from approximately July 1, 1983, to October 15, 2010. (Mot., Ex. 1, Aff. of Michael Moffatt ["Moffatt Aff."], ¶ 2.)

3.      At the time of his termination, Plaintiff was employed as a Unit Sales Manager at Branch #5053 in Greenwood Village, Colorado.  (*Id.*)

## *Plaintiff's Agreements With Bankers Life*

4.      On October 4, 1983, Plaintiff entered into an Agent Contract with Bankers Life.  (*Id.*, ¶ 3; *see also* Ex. 1-1 [1983 Agent Contract].)

5.      The 1983 Agent Contract states that:

     (b)    The General Agent may terminate this contract immediately "for cause." "For cause" means any violation by the Agent of the terms of this contract and includes, but is not limited to, **fraud**, failure to remit funds, or failure to secure and maintain necessary licenses.

     (c)    If this contract is terminated for cause as herein defined, **no commissions or other compensation or allowances shall be payable**.

(1983 Agent Contract, ¶ 18 [emphasis added].)

6.     Although Plaintiff's Agent Contract was periodically updated over the years, each agreement contained nearly identical language defining the phrase "for cause" to include fraud as well as prohibiting Plaintiff from receiving any further compensation or benefits if he was terminated "for cause." (Moffatt Aff., ¶ 4.)

7.     Although Plaintiff does not identify which employment agreement he is relying on in his Complaint, the most recent Agent Contract that Plaintiff signed went into effect in January 2006. (*Id.*, ¶ 5; *see also* Ex. 1-2 [Declaration Page].)

8.     The 2006 Agent Contract provides that:

(d) The Company may terminate this Contract immediately for cause. For cause means any violation by the Agent of the terms of the Contract and includes, but is not limited to, **fraud**, failure to remit funds, failure to secure and maintain necessary licenses, and non-compliance with established policies and procedures of the Company.

(e) If this Contract is terminated for cause as herein defined, no commissions or other payable compensation or allowances, either vested or otherwise, shall be payable.

(Ex. 1-3 [2006 Agent Contract], ¶ 22 [emphasis added].)

9.     Plaintiff admits that under his 2006 Agent Contract, termination for cause means any violation of the terms of the contract, including but not limited to fraud, and that no commissions

or other payable compensation or allowances shall be payable upon termination for cause. (Mot., Ex. 2 [Requests for Admission], Nos. 1 & 2.)[1]

10.     The 2006 Agent Contract also states that "[t]his Agent shall promote the interest of the Company as contemplated by this Contract.  The Agent's conduct shall be fair, honest, lawful and courteous, and shall not adversely affect the business, goodwill, or reputation of the company."  (2006 Agent Contract, ¶ 17.)

11.     The other "employment agreement" on which Plaintiff possibly could be relying is the Unit Sales Manager Contract.  The most recent Unit Sales Manager Contract that Plaintiff signed, dated 2001, contains the following "for cause" termination language virtually identical to the Agent Contract:

> (d) The Company may terminate this Contract immediately for cause. For cause means any violation by the Unit Sales Manager of the terms of this Contract and includes, but is not limited to, **fraud**, failure to remit funds, failure to secure and maintain necessary licenses, non-compliance with established policies and procedures of the Company or violation of employment discrimination or harassment laws . . . .  **Upon termination of this Contract for cause no further compensation of any kind will be payable**.

(Moffatt Aff., ¶ 8; Ex. 1-7; Ex. 1-8,¶  20(d) [emphasis added].)

12.     Plaintiff alleges that he became a participant in the Deferred Compensation Plan in March 1989.  (Compl., ¶ 19; see also Moffatt Aff., Ex. -4 [Deferred Compensation Plan].)

---

[1]Defendant states that Plaintiff did not respond to its First Set of Discovery Requests, which contained eight requests for admission and one interrogatory.  (Mot. at 6 n.2.)  "If the receiving party fails to respond to the request within 30 days, or within such other time as the court may allow, the matter is deemed admitted."  *Raiser v. Utah Cnty.*, 409 F.3d 1243, 1246 (10th Cir. 2005) (citing Fed. R. Civ. P. 36(a)).

13.     The Deferred Compensation Plan explicitly provides that:

> If a Participant's service terminates due to **gross misconduct** (as determined by the Committee in its sole discretion) **or criminal conduct**, the Participant's Deferred Benefit Account shall be forfeited and the Participant shall have no further interest in such Account.

(Deferred Compensation Plan, ¶ 6.2(c) [emphasis added].)

14.     During Plaintiff's employment, he also acknowledged receipt of the Agent Compliance Guidelines.  (Moffatt Aff., , ¶ 7; *see also* Ex. 1-5 [Agent Compliance Guidelines]; Ex. 1-6 [Receipt of Agent Compliance Guidelines].)

15.     Those guidelines expressly prohibit an agent from engaging in noncompliant behavior, which includes, but is not limited to, "[a]sking a client or potential client for loans."  (Agent Compliance Guidelines at 4–5).  The guidelines further state that if an agent has committed **fraud**, theft, or non-compliance with Bankers Life's policies and procedures, the agent may be terminated for cause, and receive no "commission or other payable compensation or allowances, whether vested or otherwise."  (*Id.* at 6 [emphasis added].)

***Bankers Life Terminates Plaintiff's Employment***

16.     In or around September 2010, Bankers Life became aware that, without its knowledge or authorization and outside the scope of his duties as an agent and employee of Bankers Life, Plaintiff had improperly obtained personal loans from Bankers Life policyholders for purposes other than Bankers Life's investment products.  (Moffatt Aff., ¶ 9.)

17.     Bankers Life conducted an investigation and ultimately determined that, beginning as early as April 2006, Plaintiff had improperly borrowed nearly $1.4 million from elderly

5

policyholders by convincing them to withdraw large sums of money to invest with him in

exchange for promissory notes.  However, instead of investing the money for the clients,

Plaintiff used it to finance his own real estate investment.  (*Id.*, ¶ 10.)

18.     On October 15, 2010, upon the conclusion of its investigation, Bankers Life terminated

Plaintiff's employment for fraud and violation of the Bankers Life's policies.  (*Id.*, ¶ 11.)

19.     Plaintiff admits that his employment was terminated for violating his contracts with

Bankers Life by borrowing money from its policyholders or otherwise misappropriating its

policyholders' funds for purposes other than Bankers Life's investment products.  Requests for

Admission, No. 6.)

***Plaintiff Found Guilty of Committing Theft and Securities Fraud***

20.     On April 14, 2011, the State of Colorado filed a criminal complaint against Plaintiff in

the District Court for the City and County of Denver.  (Ex. 3, Court Certified Copy of Plaintiff's

Denver County Criminal Complaint, at 1.)[2]  Plaintiff was charged with twenty-seven counts of

theft and securities fraud stemming from his actions during his employment with Bankers Life.

(Ex. 3; Moffatt Aff., ¶ 12.)

21.     On March 2, 2012, at the conclusion of a jury trial, Plaintiff was found guilty of

twenty-five charges.  (Ex. 3 at 14–17.)

---

[2]"The court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."  *See Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000).

22.     Plaintiff admits that he was convicted of committing fraud and theft.  (Requests for Admission, No. 8.)

23.     On April 20, 2012, Plaintiff was sentenced to serve twenty-five years in prison and ordered to pay restitution in the amount of $1,408,667.77.  (Ex. 3 at 2.)

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The

7

factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

Defendants move for summary judgment on Plaintiff's first two claims on the basis that Plaintiff was terminated for cause after committing fraud. Defendants also move for summary judgment on Plaintiff's third claim on the basis that declaratory judgment is inappropriate in this case.

### 1.    *First and Second Claims for Relief*

In his First and Second Claims for Relief, Plaintiff alleges the defendants breached the Deferred Compensation Plan for Field Managers and an unspecified employment agreement by failing to pay him certain compensation following his termination in October 2010. (Compl., ¶¶

30–41.)  Defendants argue that Plaintiff's First and Second Claims must fail because Plaintiff

does not and cannot dispute that, under the express, unambiguous terms of the agreements, his

termination for misappropriating policyholders' funds for his own personal gain disqualifies him

from any entitlement to additional compensation.  (Mot. at 10.)

A federal court with diversity-based jurisdiction over a case applies the laws of the forum

state in analyzing the underlying claims.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938);

*Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995).  Cases that have been removed

under 28 U.S.C. § 1441(a) are no different.  *See Headrick v. Atchison, T. & S.F. Ry. Co.*, 182

F.2d 305, 309 (10th Cir. 1950) ("It is a well established principle that in removal cases the

Federal Court must apply the state law and the state policy.").

"It has long been the law in Colorado that a party attempting to recover on a claim for

breach of contract must prove the following elements: (1) the existence of a contract; (2)

performance by the plaintiff or some justification for nonperformance; (3) failure to perform the

contract by the defendant; and (4) resulting damages to the plaintiff."  *Western Distrib. Co. v.

Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

It is undisputed that in October 2010, Plaintiff's employment was terminated for cause

after Bankers Life discovered that he had improperly borrowed nearly $1.4 million from elderly

policyholders by convincing them to withdraw large sums of money to invest with him in

exchange for promissory notes.  However, instead of investing the clients' money, he used the

funds to finance his own real estate investment.  (Moffatt Aff., ¶¶ 8–10; Requests For

Admission, No. 6.)  It also is undisputed that Plaintiff he was criminally convicted of theft and

securities fraud and sentenced to twenty-five years in prison as a consequence of his acts. (Ex. 2, Requests for Admission, No. 8; Ex. 3 at 17.) It also is undisputed that the 2006 Agent Contract, which is the most recent Agent Contract that applied to Plaintiff prior to his termination, expressly and unambiguously provides that Plaintiff could be terminated for cause, which was defined to include fraud. (2006

Agent Contract; Requests for Admission, No. 2.) Further, the contract clearly states that no further compensation, vested or unvested, shall be payable following a termination for cause. (2006 Agent Contract; Requests for Admission, No. 1.) The Unit Sales Manager Contract contains virtually identical provisions regarding the bases for termination for cause and the effect such a termination has on future compensation. (Unit Sales Manager Contract, 20(d).) Further, the Deferred Compensation Plan for Field Managers expressly provides that if Plaintiff engaged in gross misconduct or criminal misconduct, he would forfeit his Deferred Benefit Account under the plan. (Deferred Compensation Plan; Complaint, ¶ 20.)

In a case involving a similarly-worded contract, in which an insurance agent violated a state law pertaining to the insurance business, the U.S. District Court for the District of Kansas held that the agent's for cause termination resulted in her forfeiture of any additional compensation. *See, e.g., Allen v. Lincoln Mutual Ins.*, No. 93-2041-GTV, 1994 WL 171430, at *2, 4 (D. Kan. April 11, 1994) ("[Plaintiff's] violation provides cause for termination of her agency contract with the defendant pursuant to paragraph fourteen of that contract. Harsh though the result may seem, plaintiff's omission created grounds for her termination and for forfeiture of the commissions owed to her.")

In light of the undisputed fact that Plaintiff's employment and agency relationship was terminated for cause after Bankers Life discovered that he was misappropriating its policyholders' funds for his own personal gain, actions for which he was subsequently convicted of criminal conduct, Plaintiff is not entitled to any form of compensation under the terms of the 2006 Agent Contract, the 2001 Unit Sales Manager Contract, or the Deferred Compensation Plan for Field Managers.

Bankers Life is entitled to summary judgment on Plaintiff's First and Second Claims for Relief.

**2.      *Third Claim for Relief***

In his Third Claim for Relief, Plaintiff, incorporating by reference the previous allegations in the Complaint, seeks a declaration that, under the terms of his employment agreement, Defendants must pay him the monthly renewal and service fees for the remainder of his life.  (Compl., ¶¶ 42–43.)

Plaintiff's Third Claim for Relief is dependent on Plaintiff's substantive claims for which, as discussed above, this court recommends summary judgment be granted in favor of the defendants.  Therefore, Defendants also are entitled to summary judgment on Plaintiff's Third Claim for Relief.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that "Defendants' Motion for Summary Judgment" (Doc. No. 86) be **GRANTED**, and summary judgment be granted in favor of Defendants and against Plaintiff on the claims asserted in Plaintiff's Complaint.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 12th day of March, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

13